decision and journal entry
{¶ 1} Plaintiff-Appellant Champion Contracting Construction Co., Inc. has appealed from a decision of the Medina County Court of Common Pleas that entered judgment in its favor in the amount of $2,800, but denied its claim for unjust enrichment. This Court affirms.
 I {¶ 2} On August 11, 2003, Plaintiff-Appellant Champion Contracting 
Construction Co., Inc. ("Champion") filed a complaint against Defendant-Appellee Valley City Post No. 5563, Veterans of Foreign Wars of the United States ("VFW"). In the complaint, Champion contended that the VFW was indebted to it in the amount of $21,064.15 for services Champion rendered to the VFW under a construction contract. Champion was hired by the VFW to construct a new addition to an already existing building. Champion also requested the trial court to find that it held a valid lien against certain property owed by the VFW; said lien was created to secure payment of the VFW's unpaid debt.
 {¶ 3} The VFW filed an answer and counterclaim on March 2, 2001. In the counterclaim, the VFW maintained that Champion breached the construction contract by failing to complete the construction in a timely manner and that said construction was still uncompleted at the time the complaint was filed. As a result of Champion's failure to complete the construction project, the VFW claimed that it was unable to rent the new addition as a party center and was damaged in the amount of $7,700 in lost rentals. The VFW further maintained that Champion failed to construct the building in accordance with the contract drawings and documents. As a result, the VFW claimed that it had to repair and replace certain items, at a cost of $16,850.90. The VFW requested damages totaling $24,550.90. Champion replied to the VFW's counterclaim. The matter was set for a hearing before a magistrate.
 {¶ 4} After a hearing, the magistrate found that the VFW owed Champion $8,039, which was $13,025.15 less than the amount Champion requested in its complaint. The magistrate concluded that the VFW was not liable to Champion for the payment of additional expenses that were a result of oral modifications to the contract. As to Champion's claim for unjust enrichment, the magistrate held that Champion could not recover under this theory because the subject matter of its claim was covered by an express contract that existed between the parties.
 {¶ 5} The magistrate found merit in the VFW's cross-claim. Although it rejected the VFW's claim for the value of lost rentals, the magistrate concluded that Champion owed the VFW $5,239 for unfinished work which Champion was obligated to complete pursuant to the terms of the contract. After set-off of the two amounts, Champion was granted judgment against the VFW in the amount of $2,800.
 {¶ 6} Champion filed objections to the magistrate's decision. The VFW filed a response to Champion's objections. The trial court overruled Champion's objections and adopted the magistrate's decision. The trial court held that the VFW owed Champion $8,039, which was the unpaid balance under the written contract. The trial court further held that Champion owed the VFW $5,239 for unfinished work which Champion had an obligation to complete under the contract. After set-off of the two amounts, the trial court granted judgment against the VFW in the amount of $2,800.
 {¶ 7} Champion has timely appealed, asserting three assignments of error.
 II Assignment of Error Number One
"The judgment entry appealed from is not a final appealable order in failing to adjudicate all issues within the findings of the court."
 {¶ 8} In Champion's first assignment of error, it has argued that the order from which it has appealed is not a final, appealable order. This Court disagrees.
 {¶ 9} Pursuant to Civ.R. 53, a court may adopt a magistrate's decision and enter judgment without waiting for objections to be filed by the parties. Civ.R. 53(E)(4)(c). If objections are filed, the court must then rule on the objections and either "adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Civ.R. 53(E)(4)(b). If no objections are filed, the court may adopt the magistrate's decision, unless there is an error of law or other defect on the face of the magistrate's decision. Civ.R. 53(E)(4)(a). However, regardless of which option is chosen, "the trial court entry reflecting action on the magistrate's decision must be a separate and distinct instrument from the magistrate's decision and must grant relief on the issues originally submitted to the trial court." In re Dortch (1999),135 Ohio App.3d 430, 432; see, also, Harkai v. Scherba Indus. (2000),136 Ohio App.3d 211, 218. The Court in Dortch further explained that "[i]n granting such relief, the trial court simply `must sufficiently address those issues so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry.'" Dortch, 135 Ohio App.3d at 432, quoting In re Zakov (1995),107 Ohio App.3d 716, 717.
 {¶ 10} In the case sub judice, Champion has argued that the order from which it has appealed does not comply with Dortch, Zakov or Daly v.Martin (May 14, 1997), 9th Dist. No. 2599-M, at 3-4, overruled byHarkai, 136 Ohio App.3d 211. Champion has contended that the order does not "[r]esolve amounts claimed by Champion under the legal theory of unjust enrichment and elements of the VFW's off set" because "no findings regarding unjust enrichment and elements of the VFW's off sets are made in" the order. Specifically, Champion has maintained that "[n]o final order has been made regarding Champion's work completed on the premises, which was done under oral request at a time and material value of $10,721.11 work completed and remaining on the VFW real estate." This Court rejects Champion's argument because Dortch, Daly, and Zakov are inapposite to the instant matter.
 {¶ 11} In Dortch, an objecting party filed objections to the magistrate's decision pursuant to Civ.R. 53(E). The trial court issued a judgment entry in which the court overruled the objections, described the magistrate's orders, and stated: "The Magistrate's Decision is approved and becomes an order of this Court." Dortch, 135 Ohio App.3d at 431. Relying on our previous holding in Daly, the Dortch court held that "[t]o constitute a final appealable order, the trial court entry reflecting action on the magistrate's decision must be a separate and distinct instrument from the magistrate's decision and must grant relief on the issues originally submitted to the trial court." Id. at 432. Although the judgment entry from which the appellant appealed described the magistrate's orders, the Dortch court held that the order was not a final, appealable order because "the entry fail[ed] to set forth the orders of the court." Id. at 432.
 {¶ 12} Similarly, in Zakov the trial court adopted the findings and conclusions of the magistrate without setting forth the orders of the court. The trial court simply signed a journal entry that provided:
"The Court after reviewing the findings and recommendations of the [magistrate] in the above captioned matter, adopts the findings and recommendations of the [magistrate] as being just and equitable and therefore Orders, Decrees, and Adjudges that the findings and recommendations of the [magistrate] become the Order of the Court." (Alterations added.) Zakov, 107 Ohio App.3d at 717.
 {¶ 13} The appellate court held that the journal entry was not a final appealable order because "`an entry merely incorporating the recommendations of a [magistrate's decision] does not suffice as a judgment.'" Zakov, 107 Ohio App.3d at 717, quoting Wyatt v. Wyatt (Apr. 7, 1995), 11th Dist. No. 94-P-0085, 1995 Ohio App. LEXIS 5560. Quoting Inre Michael (1991), 71 Ohio App.3d 727, the Zakov court further explained that "[i]t is fundamental that the trial court employ diction which should include sufficient operative, action-like and conclusionary verbiage to satisfy the foregoing fundamental elements." Zakov,107 Ohio App.3d at 717.
 {¶ 14} In Daly, this Court also held that a judgment entry that simply overrules objections to the magistrate's decision is not a final appealable order. Daly, supra, at 7. The judgment entry stated:
"1. Both parties have objected to the decision of Magistrate Owen.
"2. The Court has reviewed the decision, the parties' briefs and oral argument.
"3. The decision sets out the facts as the Magistrate found them and this Court is satisfied those facts are accurate and her conclusions valid.
"The objections of the parties are OVERRULED.
"It is so ordered." Id. at 2.
 {¶ 15} This Court explained that the judgment entry was deficient for two reasons: 1) it did not affirmatively indicate that the magistrate's decision was adopted as required by Civ.R. 53(E) and 2) it failed to set forth the final outcome of the controversy. Id. at 2. In concluding that the order from which a party appealed was not a final appealable order, this Court stated that a trial "court need not `parrot the magistrate's findings' as to the facts and issues involved," but "the court must, at the very least, articulate the outcome and remedy." Id. at 6.
 {¶ 16} Our decision in Daly was modified by our recent decision inHarkai. The judgment entry at issue in Harkai provided, in pertinent part:
"This matter came on for hearing on the 28th day of August, 1998, upon the Defendant's Objections to the Magistrate's decision filed July 6, 1998, the Supplement to Defendant's Objections, and the Plaintiff's Response thereto.
"Upon due consideration, the decision of the Magistrate is hereby Affirmed.
"So Ordered, Adjudged and Decreed." Harkai, 136 Ohio App.3d at 220.
 {¶ 17} In accordance with prior case law, this Court in Harkai
explained that "[a]lthough the judge entirely agrees with the decision of the magistrate, the judge must still separately enter his or her own judgment setting forth the outcome of the dispute and the remedy provided. * * * The judge is not permitted to conclude the case by simply referring to the magistrate's decision, even though it may appear more expedient to do so." (Citations omitted.) Harkai,136 Ohio App.3d at 218. After providing a detailed analysis of the law in Ohio with regard to the import of a magistrate's decision rendered pursuant to Civ.R.53 and the ultimate judicial authority of the trial court, this Court held that:
"[T]he only effect of the purported judgment entry is to indicate that the trial court approved of the magistrate's decision. The trial court's statement that it `affirms' the magistrate's decision is not a statement of the relief ordered for the parties to remedy the dispute between them. Accordingly, this entry is not a judgment or final order from which an appeal might lie." Id. at 221.
 {¶ 18} This Court further held that despite our prior holding inDaly, an appellate court has jurisdiction to render a decision on a journal entry in which the trial court has failed to specifically state that it is "`adopting, modifying, or vacating' a magistrate's decision or, if a prior judgment has been entered, whether it is `vacating, modifying or adhering to its prior judgment.'" Harkai,136 Ohio App.3d at 221. We reasoned that "[b]ecause the trial court's action on the magistrate's decision is not an essential element of a final order or judgment as defined by R.C. 2505.02, Civ.R. 54, Civ.R. 58, and the common law, it is not a jurisdictional prerequisite." Id. at 221. So long as the judgment entry contains "a statement of the relief to which the parties are entitled" and is "definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case" an appellate court may exercise jurisdiction over the matter. Id. at 219, quoting Walker v. Walker (Aug. 5, 1997), 9th Dist. No. 12978, at 4.
 {¶ 19} In the instant matter, the trial court issued a judgment entry, which provided, in pertinent part:
"The Court hereby overrules the objections and hereby adopts the Magistrate's decision as the judgment of this Court.
"Therefore, pursuant to the judgment, the Court finds that [the VFW] owes [Champion] $8,039 which is [the] unpaid balance under the written contract. [Champion] owes [the VFW] $5,239 for unfinished work which was [Champion's] obligation to complete pursuant to the parties' contract. After a set off of the two amounts, [Champion] is hereby granted judgment against [the VFW] in the amount of $2,800 for which execution may issue. Interest shall accrue at the statutory rate commencing upon the date of this entry."
 {¶ 20} Unlike the judgment entries at issue in Dortch, Zakov andDaly, this Court finds that the trial court's judgment constitutes a final appealable order. Although the trial court does not specifically discuss Champion's claim for unjust enrichment, the judgment entry clearly disposes of all issues. The trial court's judgment in favor of Champion in the amount of $8,039 necessarily includes Champion's claim for unjust enrichment; the trial court obviously found that Champion was not entitled to recovery under the doctrine of unjust enrichment. Because the judgment entry from which Champion has appealed is "definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case[,]" we find that Champion's first assignment of error lacks merit.Harkai, 136 Ohio App.3d at 216, quoting Walker, supra, at 6.
 Assignment of Error Number Two
"Recovery by champion under [the] doctrine of unjust enrichment was barred by the court through adopting findings of facts and conclusions of law determined by the magistrate which were against the manifest weight of the evidence and contrary to law."
 {¶ 21} In Champion's second assignment of error, it has argued that the trial court's finding that Champion was barred from recovering under the doctrine of unjust enrichment was against the manifest weight of the evidence. This Court disagrees.
 {¶ 22} In reviewing Champion's argument, this Court is required to review the court's decision under an abuse of discretion standard. This Court has held:
"When reviewing an appeal from a trial court's adoption of a magistrate's decision under Civ.R. 53(E)(4), we must determine whether the trial court abused its discretion in adopting the decision. * * * `Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision.'" (Citations omitted.) Modie v. Andrews (July 26, 2000), 9th Dist. No. 19543, at 5; see, also, Cochran v. Charter One Bank (Feb. 5, 2003), 9th Dist. No. 21232, at 4-5.
 {¶ 23} An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 24} The doctrine of unjust enrichment has been described as an equitable theory that "give[s] rise to obligations imposed by law, irrespective of the intentions of the parties" and established "in order to prevent an injustice when one party retains a benefit from another's labors." Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800, citing SykesConstr. Co., Inc. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034, 15038, at 9-10, cause dismissed (1992), 64 Ohio St.3d 1402. Thus, in order to bring a claim of unjust enrichment, a party must establish that: 1) he conferred a benefit on another party; 2) the other party knew of the benefit; and 3) the other party retained the benefit given under circumstances where it would be unjust for him to retain it without payment. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183; see, also, Coyne v. Hodge Constr. Inc., 9th Dist. No. 03CA0061-M, 2004-Ohio-727, ¶ 5.
 {¶ 25} The doctrine of unjust enrichment, however, is "inapplicable if an express agreement existed concerning the services for which compensation is sought; the parameters of the agreement limit the parties' recovery in the absence of bad faith, fraud or illegality."Pawlus, 109 Ohio App.3d at 800, citing Aultman Hosp. Assn. v. CommunityMut. Ins. Co. (1989), 46 Ohio St.3d 51, 55. Simply put, "a claim pursuant to quasi-contract is incompatible with claims pursuant to an express contract[.]" In re Estate of Popov, 4th Dist. No. 02CA26, 2003-Ohio-4556, at ¶ 26. "The reason for this rule is that if the parties have fixed their contractual relationship in an express contract, there is no reason or necessity for the law to supply an implied contractual relationship between them." Gehrke v. Smith (July 6, 1993), 12th Dist. No. CA92-10-027, 1993 Ohio App. LEXIS 3410, at *6. Therefore, a party cannot claim that both an express contract and a quasi-contract exist over the same subject matter. See Bumbera v. Hollensen (Mar. 17, 2000), 6th Dist. No. OT-99-064, 2000 Ohio App. LEXIS 1000, at *7 (holding that "[a]n express contract and an implied contract cannot exist for the same thing at the same time."), citing Hughes v. Oberholtzer (1954),162 Ohio St. 330, 335.
 {¶ 26} As previously stated, the remedy of unjust enrichment is not available where there is an express contract covering the same subject. Therefore, in determining whether the trial court erred in finding that Champion was not entitled to judgment on its claim of unjust enrichment, this Court must first determine whether such a claim was proper in light of the fact that a written contract existed between the parties. Champion, in its appellate brief, admits that "[t]here is no dispute over the existence of a written contract for Champion to construct an addition to the VFW's hall. The terms of the agreement were dictated by the agreement itself and the plans and specifications." Champion has further argued, however, that:
"* * * The VFW negotiated the purchase of several additional work items under oral requests on a time and material basis. * * * These additional work orders involved new work and new materials that had not been contemplated or requested at the outset of the construction project. * * * NONE of these `additional work' items were the `subject matter' of the original `express contract of May 17, 2000.' * * * None showed on the plans and specifications." (Emphasis sic.)
 {¶ 27} In addition to outlining the rights and obligations of each party, the written construction contract provided that:
"Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the contracted price."
 {¶ 28} As drafter of the construction contract, Champion has argued that the "additional work" it provided does not fall under the provision in the written contract allowing for "[a]ny alteration or deviation from the above specifications." This Court disagrees. We find that the word "deviation," as the term is used in the construction contract, necessarily includes the "additional work" performed by Champion. SeeFoster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353. The "additional work" included: gas lines, new concrete pad, water spigot, four keyed locks, temporary lighting, underground refrigerator, and ceramic and quarry tiles. Because the written contract expressly covered the "additional work" completed by Champion, we find that the trial court did not err when it concluded that a claim for unjust enrichment could not lie based on the existence of an express contract.
 {¶ 29} Additionally, because this Court finds that Champion is not entitled to judgment under the doctrine of unjust enrichment, this Court need not determine whether Mr. Robert Young, an agent or member of the VFW, had the authority to order Champion to complete the "additional work."
 {¶ 30} For the foregoing reasons, Champion's first assignment of error is not well taken.
 Assignment of Error Number Three
"The findings in the judgment entry determining the sum of $5,239 as set-off or credit owed by champion to the VFW is against the manifest weight of the evidence."
 {¶ 31} In Champion's third assignment of error, it has argued that the trial court lacked competent credible evidence to grant the VFW's counterclaim in the amount of $5,239. This Court disagrees.
 {¶ 32} As discussed in Champion's second assignment of error, when reviewing an appeal from a trial court's adoption of a magistrate's decision under Civ.R. 53(E)(4), this Court must determine whether the trial court abused its discretion in adopting the decision.
 {¶ 33} In its counterclaim, the VFW argued that it was entitled to judgment for sums it paid to other contractors for work that Champion was allegedly required to perform under the terms of the written contract, in addition to damages for loss of rental income. The magistrate, and the trial court, held that the VFW was entitled to receive $5,239 from Champion, which included: 1) $988 for one upblast ventilator; 2) $640 for installation of the upblast ventilator; 3) $1,870.40 for one intake ventilator; 4) $980 for installation of a mop sink; 5) $511 for installation of a gas line; and 6) $250 for the cost of replacement locks. Champion has argued that the evidence presented at trial failed to support the trial court's judgment in favor of the VFW in the amount of $5,239.
 {¶ 34} At the hearing before the magistrate, Mr. Warren Tucky, president of Champion, presented testimony concerning the work that was completed under the contract. Mr. Tucky testified that "[t]o the best of [his] knowledge" his company installed the mop sink in a store room. He could not explain, however, why the VFW would pay another contractor to install a mop sink if the mop sink had been previously installed by Champion.
 {¶ 35} Mr. Tucky admitted that his construction company failed to install intake and upblast ventilators, which are mechanical exhaust or fresh air units that should have been installed under the terms of the contract; Mr. Greg Findley, co-owner and secretary-treasurer of Champion, also testified that the mechanical exhaust work was not completed. Mr. Tucky explained that "[i]t was — I acknowledge that it was our responsibility to provide and mount the fans, yes. Two fans." Mr. Tucky stated that, in his opinion, other than the failure to install the ventilators, Champion's job under the contract was complete.
 {¶ 36} Mr. Tucky further admitted that his construction company did not give the VFW credit for its failure to install the ventilators because "it completely slipped [Mr. Tucky's] mind." Mr. Tucky estimated that a fair credit for his company's failure to install the ventilators was "half a day or less for [installation of] the fans alone." He explained that if his company had installed the ventilators, the cost for half a day's labor was approximately $250.00. However, when asked for a "best estimate on the cost of [the ventilators,]" Mr. Tucky replied: "I would have a hard time — I would have a hard time guessing without getting a number. I just don't know if I could be accurate at all."
 {¶ 37} Mr. Tucky testified that he believed that the keys to the locks, which his construction company installed, were given to the VFW. Mr. Tucky explained that the keys were not physically given to the VFW, but once the locks were installed, the keys were simply left in the locks. The owner of the construction company further admitted on cross-examination that the plumbing was never inspected and that "until the plumbing is inspected and approved" the job is not complete. Although he admitted that the installation of the gas line was not marked on the drawings or listed in the contract, Mr. Tucky further explained that he was "certain" a gas line had been installed.
 {¶ 38} Mr. Paul Ridzy, the past commander for the VFW, testified on behalf of the VFW. Mr. Ridzy stated that he was acting commander at the time the construction contract was executed, and that he was one of the signatories to the contract. Mr. Ridzy explained that as a rigger millwright by trade, he was familiar with both mechanical exhaust and fresh air units. He testified, as did Messrs. Tucky and Findley, that the upblast ventilator and intake ventilator were not installed. As a result of Champion's failure to install these devices, Mr. Ridzy sold the devices to the VFW. He stated that he sold two upblast ventilators to the VFW for $916 a piece, for a total of $1,832; the devices were installed by a third party.[1] Mr. Ridzy further stated that an intake ventilator would cost $841; that particular device had yet to be installed at the time the hearing was held, but the VFW presented an invoice showing that it would cost the VFW approximately $1,870.40 to purchase and install an intake ventilator. Mr. Ridzy believed that quote for the intake ventilator was a "fair and reasonable estimate of the cost to install[.]"
 {¶ 39} Mr. Ridzy further testified that a meeting was held between members of the VFW and contractors from Champion in December 2000. He stated that at the meeting the VFW's members were upset and told the contractors that they did not feel that the construction job was complete. Mr. Ridzy stated that the members did not feel the job was complete because of the VFW's failure to install the intake and upblast ventilators, and "[t]here were discrepancies in the billing part itself. The toilet paper things fell off the wall, there was a crook in the floor that's — it sticks up about maybe half of an inch." He also stated that while at the meeting, Mr. Tucky told the members that Champion was not going to complete the job until it was paid in full.
 {¶ 40} Mr. Leon Heaton, another officer of the VFW, presented testimony on behalf of the VFW. Mr. Heaton is the Quartermaster with the VFW and a signatory to the construction contract, which he signed in his capacity as Quartermaster. Mr. Heaton testified that after the December 2000 meeting between members of the VFW and contractors from Champion, he did an inventory of what items needed to be repaired or completed under the contract. He stated that Champion failed to install a mop sink, although it should have been installed under the contract. Mr. Heaton explained that because Champion refused to return to complete the construction project, the VFW had to hire Piper Plumbing to install the mop sink; a check was submitted into evidence, which indicated that the VFW paid $980 to Piper Plumbing for installation of the mop sink. Mr. Heaton further stated that Piper Plumbing was also hired to connect the gas line, which cost the VFW $511.90. The locks that Champion had installed were also replaced because Champion failed to give the VFW the keys to the locks they initially installed; the VFW hired Bozack's LockSmith Service to replace the locks for $250.80. Updraft and intake ventilators were also not installed when Mr. Heaton conducted a walk through inspection in mid-October.
 {¶ 41} Mr. John Terry, a private contractor, also testified for the VFW. Mr. Terry stated that he was hired by the VFW. He hooked up the gas line to kitchen appliances and installed several items in the new facility constructed by Champion, including a mop sink. Mr. Terry stated that, based on his experience and profession, the building plans for the new facility was "unusual" because "there was no gas lines at all on there, on the plans, whatsoever, although it did show 100,000 BTU gas fired 80 percent units. You know, there was two gas units figured for the new addition, and there was no gas pipe to hook — you know, to operate it." Mr. Terry testified that gas lines were needed to run the heat, especially in light of the fact that the plan included the addition of two gas heating units.
 {¶ 42} Mr. Terry also reviewed an invoice statement issued by Champion, in which Champion charged the VFW $2,508.99 for installation of a gas line. Mr. Terry was asked his opinion on the charges outlined in the invoice and he stated that he believed the charges were too high for the man hours and the price of piping. Mr. Terry stated that had he done the installation of the gas line, he would have charged "maybe at the most maybe $1100, $1150, somewhere around in there." Mr. Terry stated that based on the construction of the building, "[t]here's no way" to justify the twenty-five to thirty additional man hours Champion charged the VFW for installation of the gas line.
 {¶ 43} After reviewing the testimony presented at the hearing, we find that the trial court did not abuse its discretion when it concluded that the VFW was entitled to $5,239 as a result of Champion's failure to install certain items in the new addition. The VFW presented credible evidence to show that it spent $988 for the purchase, $640 for installation of the upblast ventilator, $1,870.40 for one intake ventilator, $980 for installation of a mop sink, $511 for installation of a gas line, and $250 for the cost of replacement locks. Champion failed to sufficiently rebut the evidence presented by the VFW concerning these costs. Consequently, we find that the trial court's decision granting judgment in favor of the VFW in the amount of $5,239 was not unreasonable, arbitrary, or unconscionable. Accordingly, Champion's third assignment of error is not well taken.
 III {¶ 44} Champion's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Concurs.
[1] The contract provided for the installation of only one upblast ventilator. As such, Champion was only charged for the purchase and installation of one upblast ventilator.