DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee,[1] Farmers Insurance of Columbus, Inc. ("Farmers"), appeals from a jury verdict in the Summit County Court of Common Pleas. Appellee/Cross-Appellant, Kenneth Chuparkoff, cross-appeals from earlier rulings made by the trial court. This Court affirms in part and reverses in part.
 I. {¶ 2} Chuparkoff was an independent insurance agent for Farmers from March 1989 until February 2001. During that time, Chuparkoff built a client base of nearly 500 individuals and annually serviced nearly 1,000 insurance policies by 2001. During the course of his employment, Chuparkoff was not an exclusive agent for Farmers and held licenses to write for other insurance carriers, including Progressive Insurance. Chuparkoff, however, was restricted in his activities by the Agent Appointment Agreement ("the AAA") he signed in 1989.
 {¶ 3} In early 2001, Chuparkoff contacted his district manager, Gary Gibson, to inform him that one of his insureds, Rebecca Butcher, had received NSF notices from her bank because Farmers was improperly withdrawing funds to pay the premium on a policy that was no longer in effect. Around that time, Gibson spoke with Ms. Butcher and learned that her son John Butcher, who formerly had an automobile policy with Farmers, was now with Progressive Insurance. Gibson corrected the errors in Ms. Butcher's account and began to investigate the circumstances surrounding the change in John Butcher's policy.
 {¶ 4} As a result of his conversation with Ms. Butcher, Gibson learned that Chuparkoff had assisted Mr. Butcher in obtaining an automobile policy with Progressive. Thereafter, Gibson contacted Roy Smith, Farmers' Executive Director for the State of Ohio. Gibson and Smith traveled to Chuparkoff's office to discuss the matter. After receiving information which they believed to be less than forthright, Gibson and Smith began removing files from Chuparkoff's filing cabinets and copying their contents.
 {¶ 5} The following day, February 15, 2001, Smith drafted a letter summarizing his review of Chuparkoff's files and requesting Chuparkoff's immediate termination. The letter was sent to Farmers' executive office in California. One week later, Gibson and Richard Thompson, a division marketing manager for Farmers, delivered a letter to Chuparkoff which stated that he was being terminated for switching insurance from Farmers to another carrier in violation of the AAA. At the time, the Farmers' employees tendered a check to Chuparkoff in the amount of $17,000, representing one third of the payment Chuparkoff was entitled to receive under the AAA upon his termination. Chuparkoff refused to accept the check. Shortly thereafter, Chuparkoff requested a review of his termination before a Termination Review Board ("TRB").
 {¶ 6} Under the terms of the AAA, the members of the TRB were chosen as follows: Farmers would choose one member; Chuparkoff would choose one member; and the two chosen members would mutually choose a third member. Chuparkoff alleges that this procedure was not followed and that his subsequent hearing was, therefore, biased and unfair. Thereafter, the TRB recommended that Chuparkoff's termination be upheld.
 {¶ 7} As a result of the above proceedings, Chuparkoff filed suit on February 19, 2002. In his complaint, Chuparkoff alleged twelve distinct causes of action against Farmers and individually against Smith, Gibson, and Thompson. Prior to trial, Chuparkoff withdrew many of his claims. Additionally, Farmers moved for summary judgment on Chuparkoff's breach of contract claim, asserting that the AAA was unambiguous as a matter of law and that the facts which determined whether Chuparkoff breached the AAA were undisputed. The trial court denied the motion and the matter proceeded to a jury trial.
 {¶ 8} At trial, Chuparkoff produced the testimony of numerous witnesses. He elicited the testimony of several former Farmers' agents, each of whom stated that he or she did not believe that Chuparkoff had violated the AAA. In addition, Chuparkoff testified that he was trained to perform exactly how he had performed and that he placed Mr. Butcher with Progressive in an effort to maintain the remaining business in the Butcher household. Chuparkoff testified that this was consistent with his training. In addition, both parties presented the expert testimony of economists in an effort to detail Chuparkoff's alleged damages.
 {¶ 9} At the close of the evidence, Farmers and the individual defendants moved for a directed verdict on the counts of the complaint which had not been withdrawn. The trial court granted a directed verdict on multiple counts, leaving only Chuparkoff's breach of contract claim for consideration by the jury. Following deliberation, the jury found that Farmers did not have cause to fire Chuparkoff and awarded damages against the defendants in the amount of $220,000. Farmers timely appealed the judgment of the trial court, asserting three assignments of error for review. Chuparkoff cross-appealed, raising four cross-assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING FARMERS' MOTION FOR SUMMARY JUDGMENT AS TO CHUPARKOFF'S CLAIM FOR BREACH OF CONTRACT."
 {¶ 10} In its first assignment of error, Farmers contends that the trial court erred when it denied its motion for summary judgment on Chuparkoff's breach of contract claim. This Court agrees.
 {¶ 11} We begin by noting that the denial of a motion for summary judgment is reviewable following a subsequent adverse jury verdict. Balson v. Dodds (1980), 62 Ohio St.2d 287, paragraph one of the syllabus. However, any error in denying the motion "is rendered moot or harmless where evidence at a subsequent trial on the same issues demonstrates that there were genuine issues of material fact and that evidence supported a judgment for the party opposing summary judgment." ContinentalIns. Co. v. Whittington (1994), 71 Ohio St.3d 150, 156. Under the above guidelines, we proceed with our review.
 {¶ 12} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 13} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 14} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732,735. Upon review, this Court finds that the trial court erred when it failed to grant Farmers' motion for summary judgment.
 {¶ 15} In support of its motion, Farmers asserted that the AAA was unambiguous and that the interpretation of the AAA was a matter of law to be determined by the trial court. We agree.
 {¶ 16} "The purpose of contract construction is to effectuate the intent of the parties[,]" and that intent "is presumed to reside in the language they chose to employ in the agreement."Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. Further, "any assessment as to whether a contract is ambiguous
is a question of law[.]" Watkins v. Williams, 9th Dist. No. 22162, 2004-Ohio-7171, at ¶ 23. If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 246. Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions. Four Star Service, Inc. v. Akron (Oct. 27, 1999), 9th Dist. No. 19124, at *5. Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper. InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 323-24. However, courts resort to extrinsic evidence of the parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." Id. Further, the fact that the parties fail to specifically define a term within the contract does not make the term ambiguous. Ponser v. St. Paul Fire Marine Ins.Co., 104 Ohio St.3d 621, 2004-Ohio-7105, at ¶ 47. Instead, common, undefined words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander,
53 Ohio St.2d at paragraph two of the syllabus.
 {¶ 17} The parties disagree regarding whether the following contract provision is ambiguous:
"This Agreement may be terminated immediately by mutual consent or by [Farmers] for the following reasons:
"* * *
"2. Switching insurance from [Farmers] to another carrier."
Specifically, the parties disagree regarding whether the "switching" provision is ambiguous. Upon review, this Court finds that Chuparkoff produced no evidence which demonstrated that the above provision was ambiguous.
 {¶ 18} In support of his assertions, Chuparkoff presented his testimony along with the testimony of several other previous and current Farmers' agents and employees. Chuparkoff's witnesses testified that they had done things similar to Chuparkoff and had not been fired. Further, they opined that they believed that Chuparkoff's actions did not constitute "switching" under the AAA. Chuparkoff elicited this testimony in an effort to demonstrate that "switching" had a special meaning as it was used in the contract. Specifically, Chuparkoff and his witnesses testified that the "switching" provision only prevented an agent from initiating a change of insurance with a current Farmers' client. Chuparkoff opined that "switching" did not include aiding a client who initiated the idea of changing companies and did not include assisting a client who chose to renew his or her contract with Farmers. We find that such an assertion lacks merit and contradicts the intent of the parties as expressed in the AAA.
 {¶ 19} In Alexander, the Ohio Supreme Court noted that:
"Although extrinsic evidence of a general custom or trade usage cannot vary the terms of an express contract, such evidence is permissible to show that the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry not reflected on the face of the agreement." Alexander,
53 Ohio St.2d at paragraph three of the syllabus.
However, the Court continued that in order to raise a genuine issue of material fact, a party must present evidence that the custom or usage is so widespread in the industry that a valid presumption is supported that the parties intended the term to have a limited meaning. Id. at 248. Chuparkoff presented no evidence in this vein. No witness testified that "switching" had a unique meaning in the insurance industry or in any particular geographic location. Rather, Chuparkoff simply elicited the testimony of other agents who interpreted the AAA in a manner consistent with how Chuparkoff himself interpreted the agreement. Such evidence does not raise a genuine issue of material fact.
 {¶ 20} Rather, we are guided by Alexander, which requires that this Court give common words their ordinary meaning unless manifest absurdity results. Id. at paragraph two of the syllabus. According to a dictionary definition of "switching," it consists of "chang[ing] or shift[ing] things, places, methods, actions, or directions." Webster's Third New Intl. Dictionary (1986) 2313. Applying the ordinary meaning of "switching" to the AAA does not lead to manifest absurdity. Rather, such a definition aligns with the remaining portions of the AAA. Specifically, under the AAA, Chuparkoff agreed:
"To sell insurance for [Farmers] and to submit to [Farmers]every request or application for insurance for the classes and lines underwritten by [Farmers] and eligible in accordance with their published Rules and Manuals. All business acceptable to [Farmers] and written by the Agent will be placed with [Farmers]." (Emphasis added.)
Accordingly, the AAA made clear that all business that was eligible and acceptable was to be placed with Farmers. The dictionary definition of "switching," therefore, is consistent with the intent expressed by the parties: agents were required to submit all their business to Farmers if it was eligible and acceptable, and thus, were not permitted to remove eligible and acceptable business simply because the client requested it.
 {¶ 21} We further note that the definition proposed by Chuparkoff would negate many of the agent's obligations under the AAA. Under his proposed definition, if a Farmers' client informed him that he or she was not renewing with Farmers, Chuparkoff had no obligation to place them with Farmers. Further, if a current client of Farmers requested a change to a new carrier, Chuparkoff was not restricted from aiding the client. Such a definition directly contradicts the AAA provision which requires Chuparkoff to submit all eligible and acceptable business to Farmers. As Chuparkoff's proposed definition would "in effect create a new contract by finding an intent not expressed in the AAA," this Court cannot approve of such a definition. Alexander,53 Ohio St.2d at 246.
 {¶ 22} Having found that the AAA was unambiguous, Chuparkoff is barred by the parol evidence rule from relying upon the testimony of the other agents, himself, and any training manuals to contradict the plain meaning of the "switching" provision. SeeAultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. Further, applying the ordinary meaning of "switching" to the facts in the instant matter compels a conclusion that the trial court erred in failing to grant summary judgment in Farmers' favor. It is undisputed that Chuparkoff had a telephone conversation with Mr. Butcher in which Mr. Butcher expressed his desire to leave Farmers and to obtain a policy with Progressive Insurance. Chuparkoff presented no evidence that Mr. Butcher was not eligible for and/or acceptable to Farmers. In contrast, Farmers produced evidence that Mr. Butcher was, at the time he contacted Chuparkoff, a Farmers' policy owner and that he had been sent a renewal notice. Accordingly, the sole evidence before the trial court demonstrated that Mr. Butcher was eligible for Farmers' insurance and an acceptable risk to Farmers. Chuparkoff, therefore, was required to place Mr. Butcher with Farmers. Instead, Chuparkoff completed all of the required paperwork, accepted payment from Mr. Butcher, and placed Mr. Butcher with Progressive. Under the plain meaning of the "switching" provision, Chuparkoff breached the AAA. Accordingly, Farmers was within its contractual rights to terminate Chuparkoff immediately. The trial court, therefore, erred when it denied Farmers' motion for summary judgment on Chuparkoff's breach of contract claim.
 {¶ 23} Chuparkoff, however, has argued on appeal that the jury's verdict should still be affirmed because under the AAA, he was entitled to a fair value for the book of business he had built while employed with Farmers. Specifically, Chuparkoff alleges that the contract value portion of the AAA is unconscionable and the jury's award represents a fair award in place of the contractual provision. We disagree.
 {¶ 24} In the proceedings below, Chuparkoff never sought to invalidate any provisions of the AAA. He did not plead in the alternative, i.e., Chuparkoff did not allege that, even if Farmers had not breached the contract, that the contract value provision of the AAA was still unenforceable. As Chuparkoff did not raise the issue of unconscionability in the trial court, he may not for the first time do so on appeal. Assuming, arguendo, that Chuparkoff preserved the issue of unconscionability for appellate review, his claim still must fail.
 {¶ 25} Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible. Bushman v. MFC Drilling Inc. (July 19, 1995), 9th Dist. No. 2403-M, at *3, citing Collins v. Click Camera Video,Inc. (1993), 86 Ohio App.3d 826, 834. In order to determine whether a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed. Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, at ¶ 31.
 {¶ 26} Substantive unconscionability refers to the actual terms of the agreement. Contract terms are substantively unconscionable if they are unfair and commercially unreasonable. Id. at ¶ 31; Bank One, N.A. v. Borovitz, 9th Dist. No. 21042, 2002-Ohio-5544, at ¶ 16, citing Dorsey v. ContemporaryObstetrics Gynecology, Inc. (1996), 113 Ohio App.3d 75, 80. In order to determine whether a given contract provision is unconscionable, courts must examine the particular facts and circumstances surrounding the agreement. Lightning Rod Mut. Ins.Co. v. Saffle (Nov. 6, 1991), 9th Dist. No. 15134, at *3.
 {¶ 27} In support of his argument that the contract value provision of the AAA was the result of procedural unconscionability, Chuparkoff alleges that Farmers had a superior bargaining position and that he was not permitted to make changes to the AAA. We find that neither fact causes the AAA to be deemed unconscionable.
 {¶ 28} Under the facts presented, Chuparkoff cannot allege that no meeting of the minds occurred when the parties entered the AAA. Chuparkoff worked and was compensated under the AAA for approximately thirteen years. During that time, Chuparkoff never alleged that any of the provisions of the contract were unfair or unreasonable. Further, Chuparkoff has not alleged that the contract value of the contract was unconscionable when the contract was entered; nor has he alleged that he did not understand the terms of the AAA when he signed it. Rather, he contends that because he has built a substantial book of business, the provision is now unconscionable. That is, Chuparkoff effectively urges that the contract value provision is substantively unconscionable because it is commercially unreasonable. The facts, however, do not support such a finding.
 {¶ 29} Chuparkoff does not dispute that Farmers properly calculated his contract value amount under the terms of the contract. Rather, he contends that the amount is too small. Specifically, Chuparkoff asserts that his expert economist placed the value of his future earning at between $400,000 and $600,000 and that Farmers tendered him a check for roughly $50,000. Chuparkoff's use of his expert's figures, however, is misplaced. The expert employed by Chuparkoff calculated the value of the contract assuming that Chuparkoff was wrongfully terminated. That is, the expert presumed that Chuparkoff was entitled to continue receiving commission revenue from his current Farmers' clients. As noted above, however, Farmers properly terminated Chuparkoff for breach of contract. Accordingly, Chuparkoff may not rely on the report prepared by his expert to support his contentions.
 {¶ 30} The undisputed facts presented at trial establish that the terms of the AAA were commercially reasonable. During this litigation, Chuparkoff was tendered a check for nearly $50,000, representing the full amount of his contract value. During the previous year, Chuparkoff had received commission payments from Farmers' for nearly $58,000. It is further undisputed that the $58,000 that Chuparkoff received did not consist entirely of profits from his work. That is, Chuparkoff admitted that numerous expenses resulted from generating the income. In fact, his income, from all sources, did not approach $58,000. The AAA, however, prohibits Chuparkoff from servicing his current Farmers' clients for one year following his termination. As the roughly $50,000 Chuparkoff received from Farmers exceeded his entire net income for the proceeding year, including income derived from other carriers, this Court cannot say that such a term was commercially unreasonable. The contract value provision of the AAA, therefore, cannot be said to be unconscionable. Accordingly, Farmers' first assignment of error is sustained.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED AS A MATTER OF LAW BY INSTRUCTING THE JURY TO DETERMINE NOT ONLY WHAT THE INTENT OF THE PARTIES WAS IN ENTERING INTO THE AGREEMENT, BUT ALSO WHETHER THE AGREEMENT WAS AMBIGUOUS."
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING FARMERS' MOTION FOR SUMMARY JUDGMENT, SEEKING TO LIMIT THE DAMAGES CHUPARKOFF COULD RECOVER ON HIS BREACH OF CONTRACT CLAIM TO THE NET INCOME HE COULD HAVE EARNED DURING THE THREE MONTH PERIOD FOLLOWING HIS TERMINATION."
 {¶ 31} Based upon this Court's resolution of Farmers' first assignment of error, Farmers' second and third assignments of error are moot and this Court declines to address them. See App.R. 12(A)(1)(c).
CROSS APPEAL
 {¶ 32} In Chuparkoff's first, second, and third cross-assignments of error, he contends that the trial court erred in directing a verdict on various counts of his complaint. Accordingly, this Court initially notes our standard of review.
 {¶ 33} Pursuant to Civ.R. 50(A)(4), a trial court is authorized to grant a directed verdict only when:
"[A]fter construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." When ruling on a motion for a directed verdict, the court considers the sufficiency of the evidence. Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119, reversed on other grounds (1999),85 Ohio St.3d 457.
"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68; see, also Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284-85.
 {¶ 34} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. Hargrove v.Tanner (1990), 66 Ohio App.3d 693, 695. However, where substantial evidence is presented such that reasonable minds could come to differing conclusions, the court should deny the motion. Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275. Under the "reasonable minds" portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the non-moving party's claim. See Coleman v. Excello-TextronCorp. (1989), 60 Ohio App.3d 32, 40; Ruta,69 Ohio St.2d at 69.
 CROSS-ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN GRANTING [FARMERS'] MOTION FOR DIRECTED VERDICT AS TO [CHUPARKOFF'S] SIXTH CAUSE OF ACTION — TORTUOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS."
 {¶ 35} In his first cross-assignment of error, Chuparkoff contends that the trial court erred in directing a verdict on his claim of tortuous interference with business relationships. We disagree.
 {¶ 36} The Ohio Supreme Court has held that tortuous interference with business relationships occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B-Abell Elevator Co. v. Columbus Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14. This Court has held that "an employee cannot be liable in tort for interference with the business relationship of a co-worker and the employer if the action was taken within the scope of the employee's authority." Pappas v. United Parcel Service (Apr. 11, 2001), 9th Dist. No. 20226, at *4. In order to prevail on a claim of tortuous interference with business relationships against an employee, the plaintiff must demonstrate that the employee acted solely in his or her own personal capacity, and not within the scope of the employee's authority. Id.
 {¶ 37} In support of his argument, Chuparkoff notes that "[t]he gravamen of [his] tortuous interference with a business relationship claim is that because Farmers was not justified in terminating [his] contract, the [individual] defendants * * * were not justified in terminating [his] computer access and assigning [his] customers * * * to other agents." This Court, however, has held that Farmers was justified in terminating Chuparkoff's employment. Further, the testimony elicited at trial, including Chuparkoff's own testimony, indicated that the individual defendants, Smith, Gibson, and Thompson, were permitted under the AAA to perform their actions if Chuparkoff was properly terminated. Accordingly, having found that Farmers properly terminated Chuparkoff, his tortuous interference claim against the individual employees must also fail as the AAA gave the employees the privilege to perform their actions. Accordingly, Chuparkoff's first cross-assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN GRANTING [FARMERS'] MOTION FOR DIRECTED VERDICT AS TO [CHUPARKOFF'S] TENTH CAUSE OF ACTION — CONVERSION."
 {¶ 38} In his second cross-assignment of error, Chuparkoff alleges that the trial court erred when it directed a verdict on his claim for conversion. We disagree.
 {¶ 39} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Chef Italiano v. Crucible Dev. Corp., 9th Dist. No. 22415, 2005-Ohio-4254, at ¶ 26, quoting Joyce v.General Motors Corp. (1990), 49 Ohio St.3d 93, 96. In the instant matter, Chuparkoff claims that Farmers unlawfully exercised dominion over his customers and business, which constituted conversion. This Court finds that Chuparkoff's argument lacks merit.
 {¶ 40} As noted, conversion requires the "wrongful exercise" of dominion over Chuparkoff's property. However, as this Court held above, Farmers acted within its contractual rights when it terminated Chuparkoff and reallocated his clients. As Chuparkoff's sole basis for asserting that Farmers' exercise of dominion over his customers stems from his allegation that Farmers breached the AAA, his conversion claim must fail. Accordingly, Chuparkoff's second cross-assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN GRANTING [FARMERS'] MOTION FOR DIRECTED VERDICT AS TO [CHUPARKOFF'S] TWELFTH CAUSE OF ACTION — UNJUST ENRICHMENT."
 {¶ 41} In his third assignment of error, Chuparkoff contends that the trial court erred in directing a verdict on his claim of unjust enrichment. This Court disagrees.
 {¶ 42} We begin by noting that Chuparkoff, despite the wording of his assignment of error, has not alleged that he met the requirements of a claim for unjust enrichment. Further, "the remedy of unjust enrichment is not available where there is an express contract covering the same subject." ChampionContracting Constr. Co. Inc. v. Valley City Post No. 5563, 9th Dist. No. 03CA0092-M, 2004-Ohio-3406, at ¶ 26. Accordingly, Chuparkoff's claim for unjust enrichment was improper. Chuparkoff's third cross-assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN PROHIBITING [CHUPARKOFF] FROM OFFERING EVIDENCE OF THE TERMINATION REVEW BOARD (`TRB') HEARING AND THE `CEO AND STAFF' REVIEW, TO SHOW THAT FARMERS' [SIC] BREACHED THE AGENT APPOINTMENT AGREEMENT AND SMITH ACTED WITH MALICE (IN SUPPORT OF THE TORTUOUS INTERFERENCE CLAIM AGAINST HIM.)"
 {¶ 43} In his final cross-assignment of error, Chuparkoff argues that the trial court erred when it failed to permit him to introduce evidence regarding the failure of Farmers to provide him a fair hearing following his termination. Specifically, Chuparkoff alleges that the procedure provided by Farmers was biased. This Court finds that Chuparkoff's final assignment of error lacks merit.
 {¶ 44} In the AAA, Chuparkoff was granted the right to request a hearing before the TRB if he was terminated by Farmers. The AAA granted Farmers the right to choose one member of the Board, Chuparkoff the right to choose one member, and provided that those two members would mutually choose the third. Chuparkoff urges that this procedure was not followed and that the hearing he was provided was dominated by Smith. Assuming, arguendo, that Chuparkoff properly alleged a breach of this provision of the AAA, he has failed to demonstrate any prejudice resulting therefrom.
 {¶ 45} Chuparkoff was properly terminated under the provisions of the AAA. Accordingly, regardless of whether the TRB hearing was held in accordance with the AAA, Chuparkoff cannot establish any damages. He was rightfully terminated and Farmers tendered to him the compensation calculated under the AAA. There is no question that Chuparkoff bargained for a procedure in which the TRB would hold a hearing and issue a nonbinding recommendation to Farmers' executive office. However, Chuparkoff failed to submit or proffer any evidence which established damages stemming from the alleged breach.
 {¶ 46} Specifically, Chuparkoff has argued that an impartial hearing would have prevented his wrongful termination and that his evidence would have demonstrated the malice necessary to support a punitive damages award with his tort claims. Having found that Chuparkoff's tort claims were unfounded and that he was properly terminated for violating the AAA, no prejudice can be established from the alleged failure of Farmers to provide an impartial TRB hearing. Accordingly, Chuparkoff's final cross-assignment of error is overruled.
 III. {¶ 47} Farmers' first assignment of error is sustained and its remaining assignments or error are moot. Chuparkoff's cross-assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part and the cause remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee/Cross-Appellant.
Boyle, J. Concurs.
[1] For ease of discussion, this Court refers to Farmers in the singular, recognizing that Farmers encompasses multiple subsidiary companies as well and that Gary Gibson, Richard Thompson, and Roy Smith are also Appellants herein.