ODEN, Appellee,

v.

ASSOCIATED MATERIALS, INC. et al., Appellants.

[Cite as *Oden v. Associated Materials, Inc.*, 191 Ohio App.3d 314, 2010-Ohio-5981.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25120.

Decided Dec. 8, 2010.

David J. Tocco and Charles F. Billington III, for appellants.

Neil E. Klingshirn, for appellee.

BELFANCE, Presiding Judge.

{¶ 1} Appellants, Associated Materials, Inc. and Gentek Building Products, Inc., appeal the decision of the Summit County Court of Common Pleas that granted partial summary judgment in favor of appellee, Hartley Oden. We affirm the judgment of the trial court.

## BACKGROUND

{¶ 2} Oden began his employment with Gentek Building Products in 1976 with the company's information-technology department in the Warren Systems office in Warren, Ohio. In 1997, Gentek began to consider closing the Warren Systems office. In July 1997, Gentek's management met with Oden and subsequently sent him a letter confirming the substance of the parties' meeting. The main paragraphs of the 1997 letter speak to guarantees made to Oden in the event of closure of the Warren Systems office and Oden's severance package should Gentek terminate him without cause. The 1997 letter provides:

> This will confirm the following items that were discussed at our meeting yesterday at the Cleveland office:

> 1. In the event that the decision is made to close or relocate the Warren Systems office, you will be able to remain with Gentek in your same position. You will have the choice of working at Gentek's Cleveland office or telecommuting for a six[-]month trial period. If you choose to telecommute, the telecommuting arrangement can be extended indefinitely at the conclusion of the six[-]month trial period upon the mutual consent of both you and the Company.

> 2. If the situation arises where your employment with Gentek is involuntarily terminated for any reason other than cause, you will receive an extra six months of separation pay in addition to any separation pay you would be entitled to receive under the Gentek Separation Pay Policy.

> * * *

> On behalf of Gentek, we are very pleased that you have decided to remain with the Company and look forward to many mutually rewarding years in the future.

Oden remained employed with Gentek at the Warren Systems office.

{¶ 3} In February 1998, Gentek changed its company-wide Separation Pay Policy by reducing the duration of the benefits available under the policy. Oden was concerned whether the changes affected his prior severance agreement with Gentek as represented in the 1997 letter, which provided that he would receive benefits as calculated under the pre-February 1998 policy, plus an extra six months of severance pay. Oden sent an e-mail to Gentek management explaining his concerns. Oden did not recall receiving a responsive e-mail or attending a meeting exploring his concerns; however, in April 1998, Oden received a letter addressing his severance package. The 1998 letter stated:

> This will confirm that if the decision is made to close or relocate the Warren Systems Office, you will be covered by the same policy that applied when the Warren Headquarters Office was moved to the Cleveland area in 1996. The major components of that policy are as follows:

1. If your position is eliminated and as a result, your employment is involuntarily terminated for any reason other than cause, you will be covered by the Gentek Building Products, Inc. Severance Pay Plan that was in effect prior to February 16, 1998. * * *

2. If your position is moved to the Cleveland area or any other area that is not within a reasonable commuting distance of your home, and you choose not to relocate or commute, you will be eligible for the Severance Pay Plan described in Number 1 above.

The items described above would be in addition to the extra six months of separation pay that you were granted in [the 1997 letter].

The 1998 letter confirmed that Oden would receive severance as calculated under the pre–February 1998 policy, plus an extra six months of severance pay.

{¶ 4} Gentek closed its Warren Systems office in late 1998, after Oden received the 1998 letter. Oden continued to work for Gentek by telecommuting from his home.

{¶ 5} At some point after closure of the Warren Systems office, Gentek became a wholly owned subsidiary of Associated Materials, Inc. ("AMI"). On March 28, 2008, AMI eliminated Oden's position and terminated his employment, without cause. AMI did not provide Oden with the severance package as described in the 1997 letter and confirmed in the 1998 letter. Instead, AMI offered Oden severance as calculated pursuant to the AMI plan in affect in 2008. The AMI severance plan would provide Oden with less severance pay than the pre–February 1998 plan, and he would not receive the extra six months' pay promised to him by Gentek. Oden believed that the 1997 and 1998 letters constituted a contract entitling him to severance pay as provided in Gentek's pre–February 1998 plan upon his termination without cause. Oden initiated an action against AMI and Gentek (collectively "the company") seeking to enforce the terms of the severance package as outlined in the letters.

{¶ 6} In the trial court, the company and Oden each sought partial summary judgment on the issue of which severance package the company was obligated to provide Oden: (1) Gentek's pre–February 1998 policy, plus an additional six months of pay or (2) AMI's policy in effect at the time of Oden's termination. The company argued that the 1997 and 1998 letters provided that Oden was only entitled to severance calculated pursuant to Gentek's policy, plus six months, if he was terminated without cause when the company closed the Warren Systems office. The company argued that because Oden remained employed long after the closure, the company was no longer bound by the 1997 and 1998 letters. Oden countered that the language of the letters does not lead to the interpretation alleged by the company. Instead, Oden asserted that the letters provided that if Oden's position was eliminated and he was terminated without cause at

any time after the closure of the Warren Systems office, he would be entitled to the severance package described in the 1997 letter and confirmed in the 1998 letter. Oden argued that each of those events occurred, thus the company's obligation with respect to severance arose.

{¶ 7} The trial court agreed with Oden. It stated that it was undisputed that the Warren Systems office closed, Oden's position was eliminated, and he was terminated; thus, the company's duties were triggered pursuant to the letters. Further, "[the letters] incorporate[ ] no time limitation or duration." The court granted Oden's motion for partial summary judgment, finding that he was entitled to severance pay as outlined in the 1997 and 1998 letters. The court denied the company's motion for partial summary judgment. The parties subsequently reached an agreement as to the amount of damages to be awarded to Oden by the trial court. The damages award was subsequently journalized by the trial court.

{¶ 8} The company appealed the trial court's judgment. Oden filed a responsive brief and included a cross-assignment of error. The company filed a motion to strike the cross-assignment of error, alleging that it was an improperly filed cross-appeal.

### SUMMARY JUDGMENT

{¶ 9} This court reviews a trial court's ruling on a motion for summary judgment de novo and applies the same standard as the trial court. *Chuparkoff v. Farmers Ins. of Columbus, Inc.*, 9th Dist. No. 22712, 2006-Ohio-3281, 2006 WL 1751219, at ¶ 12. The facts are viewed in the light most favorable to the nonmoving party. Id. Pursuant to Civ.R. 56(C), summary judgment is appropriate when "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639.

{¶ 10} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issues of material fact exist. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. Id. at 293. Pursuant to Civ.R. 56(E), the nonmoving party may not simply rest on the allegations of its pleadings; it must provide the court with evidentiary material, such as affidavits, written admissions, and/or answers to

interrogatories, to demonstrate a genuine dispute of fact to be tried. See also *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 11} The company has raised three assignments of error: (1) that the trial court erred in granting summary judgment to Oden, (2) that it erred in denying the company's motion for partial summary judgment, and (3) that it erred in its award of damages to Oden. Because the company's assignments of error are interrelated, we will consider them together.

{¶ 12} The central question on appeal is the interpretation of the 1997 and 1998 letters sent to Oden. The company contends that the trial court's interpretation of the contract was erroneous because the trial court ignored the "context, structure, and typography of the 1998 Letter Agreement."

{¶ 13} The parties do not dispute that these letters represent contracts between the company and Oden. "The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal." *Watkins v. Williams*, 9th Dist. No. 22162, 2004-Ohio-7171, 2004 WL 3017228, at ¶ 23. Generally, the intent of the parties is exhibited in the language of the contract itself. *Foley v. Empire Die Casting Co., Inc.*, 9th Dist. No. 24558, 2009-Ohio-5539, 2009 WL 3366269, at ¶ 12. If the language of the contract is unambiguous, "its interpretation is a matter of law unaccompanied by the need for factual determinations." *Watkins* at ¶ 23. "Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions." Id. "Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations." *Foley* at ¶ 12.

{¶ 14} Upon review of the 1997 and 1998 letters, it is apparent that the language employed was clear and unambiguous. Thus, the trial court correctly found that it was unnecessary to look beyond the language contained in the letters to determine the terms of the contract. The company does not dispute this aspect of the trial court's order; rather, it asserts that the trial court erred in rejecting the company's interpretation of the letters.

{¶ 15} The 1997 letter addresses three topics. First, if the Warren Systems office is closed or relocated, Oden would be retained and would have the option of either working in the company's Cleveland office or working from home and telecommuting. Second, if the company terminated Oden for any reason other than cause, Oden would be entitled to an extra six months of severance pay beyond the amount to which he would be entitled pursuant to the company's severance plan. Finally, Oden would be offered stock options. With regard to the severance-pay package, there is no language to support the company's position on appeal that receipt of that pay as outlined in the 1997 letter was

conditioned on termination of Oden's employment simultaneously with the closure of the Warren Systems office. On the contrary, based upon the language in the letter, the parties contemplated that Oden would remain employed after the closure and work in Cleveland or from home and that the company "look[ed] forward to many mutually rewarding years in the future."

{¶ 16} In February 1998, the company amended its severance plan to provide less severance pay than that which was offered under its prior company plan. Oden was concerned about the effect that this change would have on the company's guarantee in the 1997 letter that he would receive severance based on the plan in place before February 1998, plus an extra six months. After Oden expressed his concerns to management, the company sent him the 1998 letter. In the 1998 letter, the company confirmed that if the Warren Systems office was closed, Oden would be covered by the severance package policy that applied when the company's headquarters were moved to Cleveland, i.e., the pre–February 1998 policy. The 1998 letter also provided that if Oden's position was moved to an area not within a reasonable commuting distance from his home and Oden chose not to commute or relocate, Oden would be granted severance as provided in the pre–February 1998 plan. Further, Oden would also be entitled to an extra six months of severance pay as described in the 1997 letter. Upon review of both letters, we do not agree with the company's restrictive interpretation of the language contained in the letters. Although the 1998 letter opens by referring to the possible closure of the Warren Systems office, the letter does not state that Oden's right to his severance pursuant to the pre–February 1998 plan, plus six months' additional pay, arises only if elimination or relocation of his position coincides with the closure of the Warren Systems office.

{¶ 17} The company urges this court to consider the format and "typography" of the 1998 letter to demonstrate that Oden would be entitled to the pre–February 1998 severance package only if his job was eliminated at the same time that the Warren Systems office was closed. While the format of the letter is a consideration, we will not interpret the format to unreasonably contort the plain meaning of the language of the letter. The 1998 letter does not contain language limiting the payment of the severance to the simultaneous occurrence of the closing of the Warren Systems office and the elimination of Oden's employment. The opening paragraph of the 1998 letter confirmed that "if the decision is made to close or relocate the Warren Systems Office," Oden would be covered by Gentek's pre–February 1998 severance-package plan. The 1998 letter then outlined the major components of that prior policy, which included the promise that if Oden's position was eliminated and he was terminated without cause, he would be entitled to the pre–February 1998 severance package, plus six months of extra pay. The trial court correctly determined that Oden's right to a

particular severance package was dependant upon the occurrence of three separate conditions: closure of the Warren Systems office, elimination of Oden's position, and his termination without cause. Moreover, there is no provision in the letters that elimination of Oden's position and his termination must occur simultaneously with the closure of the Warren Systems office. All of the conditions identified in the letter occurred; thus, the company became obligated to provide the severance package it agreed to provide Oden pursuant to the 1997 and 1998 letters. The trial court correctly denied the company's motion for partial summary judgment and correctly granted Oden's motion for partial summary judgment. The company's first and second assignments of error are overruled.

## DAMAGES

{¶ 18} The company states as its third assignment of error: "The Trial Court erred as a matter of law when it awarded $244,641.80 in damages to Oden based on the November 6, 2009 Order." The company, however, has presented no argument in support of this contention within the argument section of its brief. Thus, the company's third assignment of error is overruled. See App.R. 16(A)(7).

## MOTION TO STRIKE

{¶ 19} In his responsive brief, Oden submitted a cross-assignment of error in which he argues that in the event that this court determines that ambiguities exist in the 1997 and 1998 letters, we must consider the affidavit and deposition of the company's human-resources director to interpret the letters. The company contends that Oden has attempted to file a cross-appeal, which should be stricken because proper notice of a cross-appeal pursuant to the Appellate Rules was not given. Because we have determined that no ambiguity exists, this issue has become moot because any determination that this court would make would have no legal effect on the actual controversy. Thus, we decline to address Oden's argument and the company's motion to strike.

## CONCLUSION

{¶ 20} The assignments of error advanced by Associated Materials, Inc. and Gentek Building Products, Inc. are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR and WHITMORE, JJ., concur.