OPINION
{¶ 1} Plaintiffs-appellants, Donald L. Hartley and Carlton W. Hartley, in their capacity as trustees of the C. Carlton Hartley Trust ("Hartley Trust"), appeal the decision of the Madison County Court of Common Pleas granting judgment in favor of Brown Publishing Company ("Brown") in a forcible entry and detainer action, otherwise known as an eviction proceeding.
 {¶ 2} This case arose as a result of a fire at 30 South Oak St., London, Ohio ("Oak Street") in September 2004. Appellants, in their capacity as trustees of the Hartley Trust, hold legal title to the Oak Street property. On October 1, 2002, the Trust entered into a lease agreement with Central Ohio Printing Corporation ("Central"), in which Central agreed to lease the Oak Street premises until September 30, 2007. Central had been a tenant at Oak Street since 1973, and the October 2002 lease was a renewal lease drafted by Central.
 {¶ 3} In addition to serving as a trustee of the Hartley Trust, Donald Hartley worked for Central at Oak Street as a publisher. Hartley testified at trial that in his capacity as publisher for Central, and at the direction of his supervisor at Central's Alabama office, he procured and renewed insurance for Oak Street. Accordingly, when Central entered into the renewal lease in October 2002, Hartley obtained fire and casualty insurance through State Auto Insurance Company. Central was listed as the named insured on the policy, and the Hartley Trust was listed as the loss payee. The policy was renewed and the premiums were paid for the policy period from October 1, 2003 to October 1, 2004.
 {¶ 4} In June 2004, Brown acquired all of Central's assets at Oak Street and assumed all of the Oak Street lease obligations through an asset purchase agreement and a lease assignment. After Brown took over, Donald Hartley continued working as a publisher at Oak Street for approximately six weeks. Hartley testified that he did not, however, continue making insurance decisions for the Oak Street property once Brown took over operations at Oak Street.
 {¶ 5} On September 11, 2004, a fire originated in the press room of the Oak Street building, causing damage to the press room and roof of the building. The Hartley Trust notified State Auto, who then began a claim investigation. At the conclusion of their investigation, State Auto informed Donald Hartley in a three-page letter that the fire damage was not a covered loss under the policy because both the named insured, Central, and the loss payee, the Hartley Trust, did not have a financial interest in the covered property at the time of the fire. According to State Auto's letter, Central transferred its interest in Oak Street to Brown when it executed the asset purchase agreement and the lease assignment with Brown in June 2004, thereby divesting itself of its financial and ownership intents in the building and contents damaged by the September 11, 2004 fire. Consequently, because Central had no insurable interest in the property, Hartley Trust had no right to recover as a loss payee.
 {¶ 6} When State Auto denied coverage, a dispute arose between appellants and Brown over who was responsible for informing State Auto that as of June 2004, Brown was the named insured under the policy, not Central. According to appellants, the duty to inform State Auto of the change rested upon Brown because the lease stated the lessee was responsible for paying for fire and casualty insurance and because Central, Brown's assignor, established a pattern of procuring the insurance.
 {¶ 7} Brown disagreed, and pursuant to a provision in the lease granting the lessee a rent abatement in the event that the premises, in whole or in part, became unfit for occupancy, began paying appellants only 50 percent of the monthly rent. When the parties could not resolve their dispute, appellants declared the lease terminated and sought an eviction through a forcible entry and detainer action.
 {¶ 8} In their complaint, appellants alleged that Brown breached the assigned lease by, among other things, failing to procure and maintain fire insurance, and that the breach of the lease gave them the right to a writ of restitution, and immediate possession of Oak Street, pursuant to R.C. 1923.01 et seq.
 {¶ 9} A bench trial was conducted on January 18, 2005. On February 4, 2005, the trial court issued a decision finding no cause for eviction and denying appellants' request for a writ of restitution. This appeal followed, in which appellants raise two assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN DENYING RESTITUTION OF THE PREMISES IN FAVOR OF THE PLAINTIFFS-APPELLANTS IN THE TRIAL COURT'S DECISION AND ENTRY FILED ON FEBRUARY 4, 2005; SAID OPINION WAS CONTARY [SIC] TO LAW AND WAS NOT SUSTAINED BY THE WIEGHT [SIC] OF THE EVIDENCE."
 {¶ 12} In their first assignment of error, appellants contend that the trial court's decision denying a writ of restitution was contrary to law and against the manifest weight of evidence. Specifically, appellants contend the trial court misinterpreted the lease, and that the weight of the evidence presented at trial demonstrated that Brown breached several of its contractual duties under the lease.
 {¶ 13} To begin, we will not reverse a judgment as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. C.E. Morris Co. v. Foley Const.Co. (1978), 54 Ohio St.2d 279, syllabus. Evaluating evidence and assessing its credibility are the primary functions of the trier of fact, not an appellate court. Yuhasz v. Mrdenovich (1992),82 Ohio App.3d 490, 492. We will not substitute our judgment for that of the trial court if there is competent and credible evidence supporting the trial court's findings of fact and conclusions of law. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 14} Under R.C. 1923.02(A)(9), "proceedings in forcible entry and detainer may be had: `Against tenants who have breached an obligation imposed on them by a written rental agreement.'"Fodor v. First National Supermarkets, Inc. (1992),63 Ohio St.3d 489, 492. R.C. 1923.02 "empowers landlords to regain possession of their property upon a tenant's breach of the rental agreement." Dennis v. Morgan, 89 Ohio St.3d 417, 418, 2000-Ohio-211.
 {¶ 15} A lease is a contract. U.S. Corrections Corp. v. OhioDept. of Indus. Relations, 73 Ohio St.3d 210, 216, 1995-Ohio-102. Consequently, the laws and remedies concerning breach of contract govern leases, regardless of the commercial or residential nature of the lease. Frenchtown Square Partnershipv. Lemstone, Inc., Mahoning App. No. 99 CA 300, 2001-Ohio-3245.
 {¶ 16} The construction of written contracts is a matter of law, Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus, and a trial court's construction of a contract is reviewed de novo. Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement. Graham v. Drydock Coal Co.,76 Ohio St.3d 311, 313, 1996-Ohio-393.
 {¶ 17} When terms of a contract are unambiguous, courts look to the plain language of the document. Latina v. Woodpath Dev.Co. (1991), 57 Ohio St.3d 212, 214. The contract must also be interpreted as a whole, with "the intent of each part gathered from a consideration of the whole." Saunders v. Mortensen,101 Ohio St.3d 86, 89, 2004-Ohio-24, ¶ 16.
 {¶ 18} Appellants first contend the weight of the evidence at trial demonstrated Brown breached paragraph 10(e) of the lease by failing to maintain fire insurance. Paragraph 10(e) states: "Lessee shall pay the cost of fire and extended coverage insurance on the premises in the amount of the full replacement cost thereof."
 {¶ 19} The trial court drew a distinction between the obligation to pay for fire insurance and the obligation to procure, or maintain, fire insurance. Accordingly, the court interpreted paragraph 10(e) to mean that Brown had the obligation to pay for fire insurance, but not maintain it, concluding the duty to procure and maintain the insurance rested upon appellants.
 {¶ 20} In reaching its conclusion, the trial court relied onAngola Development Co., Ltd. v. Lion Dry Goods Co. (July 21, 1989), Lucas App. No. L-88-380, wherein the court found that a lease stating the lessee shall "at its expense, during all such times, maintain" fire insurance imposed a duty on the lessee to procure the insurance. (Emphasis added.) Consistent with the lease language in Angola, the trial court concluded that for appellants to impose a duty on Brown to maintain insurance, and not just pay for it, the lease needed to include an operative word such as "obtain," "maintain," or "procure." We agree.
 {¶ 21} Additionally, paragraph 9 of the lease imposes a duty upon the lessee to "carry and pay for public liability insurance." (Emphasis added.) Reading this provision together with paragraph 10(e), and interpreting the lease as a whole, we conclude that the lease unambiguously distinguishes between the duty to carry, or maintain, insurance and the duty to merely pay for the insurance. We also conclude that the duty to inform State Auto of a change in the named insured from Central to Brown rested upon appellants, the party with the duty to procure the insurance.
 {¶ 22} Appellants contend, nevertheless, that Central's conduct under the lease before it sold its assets and assigned the Oak Street lease to Brown became part of the lease and obligated Brown, as an assignee, to procure and maintain the insurance. Hartley testified at trial that while he worked as a publisher for Central, he procured fire insurance at the direction of his supervisor in Central's Alabama office. Consequently, appellants contend, the pattern established by Central of procuring the insurance should have been binding on Brown.
 {¶ 23} It is true that an assignee of a lease is bound by the terms of the lease entered into by the assignor. See Gholson v.Savin (1941), 137 Ohio St. 551, paragraph two of the syllabus. In the instant case, however, the trial court found that Hartley was "wearing two hats" while working as a publisher for Central. Hartley was serving as a trustee for the Hartley trust and taking directions from Central's Alabama office when he procured fire insurance for Oak Street. The trial court was not persuaded that Hartley was acting in his capacity as an employee of Central, the assignor, when he procured and renewed the fire insurance, and therefore Brown, the assignee, was not bound by his acts.
 {¶ 24} As noted above, the trier of fact has the best opportunity to view witnesses, observe their demeanor, gestures and voice inflections and, ultimately, assesses their credibility. Seasons Coal, 10 Ohio St.3d at 80; see, also,Stuart v. National Indem. Co. (1982), 7 Ohio App.3d 63, 67. Thus, we will not substitute our judgment for that of the trial court on whether Brown was acting in the capacity as an employee of Central.
 {¶ 25} Appellants next contend the trial court erred in denying a writ of restitution because the evidence at trial demonstrated that Brown breached the duty in paragraph 9 of the lease to carry and maintain public liability insurance. Paragraph 9 of the lease states:
 {¶ 26} "Public liability. Lessee will indemnify Lessor and hold Lessor harmless against all claims, demands and judgments for loss, damage or injury to property or person, resulting or occurring by reason of the use and occupancy of the premises by Lessee. Lessee agrees to carry and pay for public liability insurance in limits of $1,000,000 and $1,000,000 and Total $2,000,000 on account of damage to property naming Lessor as an insured and to deposit memorandum copies of certificates of said policy with Lessor."
 {¶ 27} This provision requires Brown to indemnify and hold the Hartley Trust harmless against all claims, demands, and judgments resulting from Brown's use and occupancy of Oak Street. Appellants did not submit any evidence at trial establishing that a third party has brought a claim or demand against the Hartley Trust for damage to property or persons resulting from the fire. Accordingly, we do not find the trial court's decision to deny a writ of restitution for a breach of paragraph 9 of the lease to be against the manifest weight of the evidence.
 {¶ 28} Appellants contend, nevertheless, that Brown failed to demonstrate at trial that it even carries public liability insurance, and that a failure to carry the insurance, is a breach of the lease warranting the grant of a writ of restitution.
 {¶ 29} Hartley testified that the Hartley Trust requested, but has not received, proof that Brown carries public liability insurance. Roy Brown, the president of Brown, testified at trial that he has insurance covering his entire operation and that Oak Street is now covered under that policy. We cannot discern from the record whether the coverage Brown now has for Oak Street includes public liability insurance.
 {¶ 30} This lack of clarity in the record need not be resolved, however, for in denying appellants' request for a writ of restitution, the trial court found that the rights of the parties, their liabilities, and any damages are to be litigated to a jury, and that appellants' remedies, if any, lie in damages, not forfeiture. For the reasons that follow, we agree with the finding of the trial court that appellants' remedies, if any, lie in damages.
 {¶ 31} A forcible entry and detainer action affects only the question of the present right to possession of real property, and "possession is the sole ultimate issue in the case." CentralPark Place v. McDowell (1974), 38 Ohio App.2d 29, 31. Moreover, it is well-established that equity abhors a forfeiture, and that a trial court may order damages for a breach rather than forfeiture. Thus, the decisions of a trial court are reviewed under an abuse of discretion standard when it finds that damages, rather than forfeiture, are the appropriate remedy for a breach of a lease. See Joseph J. Freed and Associates, Inc. v.Cassinelli Apparel Corp. (1986), 23 Ohio St.3d 94.
 {¶ 32} Because appellants did not submit evidence that a third party has sought to recover from them for damages resulting from the fire, appellants' damages, if any, for Brown's failure to carry public liability insurance would be minimal. Accordingly, we find no abuse of discretion with the trial court's decision to order a damages hearing rather than forfeiture.
 {¶ 33} Appellants next contend they were improperly denied a writ of restitution because the weight of the evidence at trial demonstrated that Brown breached its duty to repair under paragraphs 11(a) and (b) of the lease. In relevant part, paragraph 11 provides:
 {¶ 34} "Lessor shall maintain the exterior of the premises, including the roof, foundation and structural portions thereof, in good condition and repair, except such as may be required thereto by reason of the acts of the lessee.
 {¶ 35} "Lessee shall keep and maintain the interior of the premises in good condition and repair, except such as may be required thereto by reason of the acts of Lessor, including, but not limited to, the air conditioning, heating, electrical, plumbing and sewer systems, the exterior doors and window frames and the replacement of all broken and cracked glass and excepting, however, all repairs made necessary by reason of damage due to fire or other casualty covered by standard fire and extended coverage insurance."
 {¶ 36} This provision expressly excludes all "repairs made necessary by reason of damage due to fire or other casualty covered by standard fire and extended coverage insurance" from the lessee's duty to repair. Appellants do not dispute that Brown paid the fire insurance policy premiums up to and through the date of the fire. But for appellants' failure to notify the carrier of the change in insureds, there would be no need for litigation on who is responsible for repairs. Appellants can not shift the burden of the cost of repairs to Brown under the duty to repair provision of the lease when the cost of the repairs was due to appellants' failure to properly maintain fire insurance.
 {¶ 37} Furthermore, the trial court also found that to the extent Brown has in any way breached its duty to repair, appellants' remedy lies in seeking damages, not forfeiture. Again, we find no abuse of discretion on the part of the trial court in concluding that forfeiture is not the appropriate remedy in this case.
 {¶ 38} The first assignment of error is overruled.
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN DENYING RESTITUTION OF THE PREMISES IN FAVOR OF THE PLAINTIFFS-APPELLANTS WHEN THE TRIAL COURT FAILED TO PROPERLY INTERPRET THE LEASE AND PLACED THE BURDEN OF PROOF REGARDING THE AMOUNT OF RENT DUE AS CONSEQUENCE OF THE FIRE UPON THE PLAINTIFF RATHER THAN THE DEFENDANT. THE PURPORTED OFFSET CLAIMED BY THE DEFENDANT OF FIFTY PERCENT (50%) OF THE STATED RENT, AS A CONSEQUENCE OF THE FIRE, WOULD NECESSARILY BE AN AFFIRMATIVE DEFENSE FOR THE DEFENDANT TO PROVE ENTITLEMENT TO AND IN WHAT PROPORTION."
 {¶ 41} In their second assignment of error, appellants contend the trial court misinterpreted and misapplied paragraph 15(a) of the lease when it found that appellants failed to establish by the weight of the evidence that a 50 percent rent abatement was disproportionate to the portion of the building rendered unusable by the fire.
 {¶ 42} In relevant part, paragraph 15(a) states: "If the premises shall be destroyed or so injured by any cause as to be unfit, in whole or in part, for occupancy * * *, a proportionate abatement shall be made to Lessee from the rent corresponding to the time during which and to the portion of the premises of which Lessee shall be so deprived of the use on account thereof."
 {¶ 43} If the leased premises becomes unfit for occupancy, in whole or in part, this provision grants Brown a rent abatement proportionate to the portion of the premises that become uninhabitable. Only one room, the press room, became uninhabitable because of the fire, and the press room is only 20 percent of the total space in the building. Consequently, according to appellants, the trial court's decision to allow Brown a 50 percent rent abatement was in error.
 {¶ 44} Brown counters that the 50 percent reduction was proportional and warranted because the press room is a critical room in the building, substantially affecting the operation of the printing business Brown conducts there.
 {¶ 45} Upon reviewing the lease, we see no error with the trial court's interpretation of paragraph 15. We also find the trial court's decision to grant a 50 percent rent abatement is supported by competent, credible evidence. Brown offered testimony at trial that a press is located in the fire damaged room, and that the press can not be operated until the room is repaired. Brown's testimony also established that the operation at Oak Street has suffered at least a 50 percent loss of production because of the fire damage. Thus, appellants' contention that the trial court misinterpreted and misapplied paragraph 15 of the lease is not well-taken.
 {¶ 46} Appellants also contend the trial court erred in finding that the burden of proof with respect to rent abatement rested on them and not Brown. According to appellants, rent abatement is an affirmative defense. Therefore, the burden of proof that a 50 percent rent abatement was proportional to the damage to Oak Street should have been on Brown.
 {¶ 47} In support of its contention that rent abatement is an affirmative defense, appellants cite to Alperin v. Feldman
(App. 1933), 14 Ohio Law Abs. 723.[1] We find Alperin to be inapposite to the case at bar. In Alperin, the issue before the court was whether the defendant paid the plaintiff money due under a contract. The court held that "if an affirmative contract to pay money or to perform some duty is proved, it is then incumbent on [the] defendant to prove payment, performance or tender, or a sufficient excuse therefrom."
 {¶ 48} Unlike Alperin, the issue in this case is not whether Brown paid the rent due under the lease. Neither party disputes that Brown paid only 50 percent of the total rent due for the three months immediately preceding the eviction proceedings. It is also undisputed that under appropriate circumstances Brown has a contractual right to rent abatement. The issue in this case is how much rent, if any, Brown was entitled to withhold under the contract. This issue was properly determined by the trial court under the weight of the evidence standard.
 {¶ 49} Appellants' second assignment of error is overruled.
 {¶ 50} Judgment affirmed.
Powell, P.J., and Young, J., concur.
[1] Appellants also cite to Valley Homes Mutual Housing Corp.v. Wildon (May 2, 2001), Hamilton App. No. C0-00574. This opinion, however, was considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and is not controlling authority.