OPINION {¶ 1} Plaintiff-appellant, Fultz and Thatcher ("F T"), appeals a decision of the Warren County Court of Common Pleas granting summary judgment to defendant-appellee, Burrows Paper Corporation, in a breach of contract action filed by F T.
 {¶ 2} In November 1993, Burrows leased a corrugator, a machine to manufacture corrugated material for use as board products, from F T. On the same date, F T also leased two properties to Burrows. The corrugator was installed in one of the properties. All three leases were originally to last for 84 months. The leases were amended several times, and the length of the leases was extended to May 31, 2004.
 {¶ 3} The equipment lease provided that within at least 90 days of the expiration of the lease, Burrows would give F T "written notice of its electing one of the following options for the [equipment: return the [equipment under clause (b) below; or purchase the [equipment under clause (c) below."
 {¶ 4} Clause (b) provides that if Burrows "elects or is deemed to have elected to return the [equipment at the expiration of the lease" it shall "at its sole expense and risk, deinstall, disassemble, pack and crate, insure and return the [equipment" to F T.
 {¶ 5} Burrows decided not to buy the corrugator. On March 4, 2004, an attorney for F T mailed a letter acknowledging that Burrows had indicated it would be returning the corrugator at the end of the lease. The letter further stated that since F T would also be taking possession of the facility in which the corrugator was assembled, F T wanted Burrows to retain the corrugator as currently installed in the facility, and that the corrugator should not be de-installed disassembled, packed or crated. It stated that as long as the corrugator passed an operations test, Burrows would be deemed to have performed its obligations under the return provision of the lease. The letter concluded, "[i]f you are in agreement with this procedure, please sign below and return a copy to me at your earliest convenience."
 {¶ 6} On April 19, 2004, F T faxed a letter to Burrows, confirming that Burrows was not purchasing the corrugator, and directing Burrows to leave the machine intact where it was. The letter also discussed proposed times for Perry Thatcher to inspect the corrugator in operation. Burrows responded in an e-mail, giving a time for the inspection and stating that there was no change in Burrows' plans to disassemble the corrugator as contemplated under the lease.
 {¶ 7} Perry Thatcher visited the plant in April, and on May 6, 2004, Burrows wrote a letter addressing how the company had fixed or planned to remedy four areas of concern Thatcher had noted during his inspection. The letter also stated, "[t]he corrugator is in the process of being dismantled and crated. It should be ready to ship by May 17, 2004."
 {¶ 8} Both parties dispute several factual allegations made by the other party. F T claims that Burows disassembled the corrugator so that another company would not be able to immediately compete with it. According to Perry Thatcher, he was told that he could inspect the equipment a second time while it was not running and that the disassembly was done in secret while he was led to believe that Burrows would not disassemble the machine. Burrows argues that it disassembled the machine to comply with the requirements of the lease, that Thatcher knew it was being disassembled and that there was no agreement for a second inspection of the machine.
 {¶ 9} F T filed a complaint against Burrows for breach of the equipment lease based on Burrows' failure to follow F T's directives to leave the machine intact on the premises. The complaint also included causes of action for conversion, civil theft, and intentional interference with a prospective business advantage.[1]
 {¶ 10} Burrows requested summary judgment, which the trial court granted on the claims involving breach of the equipment lease, theft, conversion and interference with a business prospect. The parties resolved the remaining claim in the complaint, and a final judgment was entered by the trial court.
 {¶ 11} On appeal, F T raises a single assignment of error: the trial court erred in granting summary judgment in favor of Burrows on the contract and tort law claims. This assignment of error raises three distinct arguments: 1) contract interpretation can not be absurd, or in bad faith; 2) the evidence suggests Burrows accepted F T's waiver of their right to require shipment; and 3) the tort claims are viable. At oral argument, the court requested that the parties brief two additional issues: a) whether the "no-modification clause" is binding on both parties; and b) what are the parties' positions regarding the "right to inspect" and compliance with that clause? We begin our discussion with these two additional issues
 No-Modification Clause {¶ 12} The lease contains a provision stating:
 {¶ 13} "REGARDLESS OF ANY PRIOR, PRESENT OR FUTURE ORAL AGREEMENT OR COURSE OF DEALING, LESSEE AGREES THAT NO TERM OR CONDITION OF THE LEASE MAY BE AMENDED, MODIFIED, WAIVED, DISCHARGED, RESCINDED OR TERMINATED EXCEPT BY A WRITTEN DOCUMENT SIGNED BY LESSOR AND LESSEE."
 {¶ 14} The clause is placed after the parties' signatures on the lease, and is signed by an officer of Burrows.
 {¶ 15} F T contends that because only Burrows' signature follows the clause, the provision applies only to Burrows. It argues therefore, only Burrows is required to have any modifications to the contract signed by both parties. Burrows argues that the clause binds both parties, so that no modifications can be made to the lease without the written agreement of both parties.
 {¶ 16} "Generally, a party's signature to a contract does not need to appear at any particular place." Bennett v. Fier (July 2, 1998), Greene App. No. 97-CA-116; see, also, 17 Ohio Jurisprudence 3rd
(2001), 418, Contracts section 73. Instead, the signature "must be inserted in the contract in such a form and manner as to have the effect of authenticating it * * *." 17 Ohio Jurisprudence 3rd
(2001) 418 section 73. Therefore, the placement of only Burrows' signature under the clause does not automatically mean that only Burrows is bound by the requirement.
 {¶ 17} The wording of the clause indicates that both parties are bound by the requirement that any modification be in writing. Ohio law continues to hold that the parties bind themselves by the plain and ordinary language used in a contract unless those words lead to a manifest absurdity. See Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus; Shifrin v. Forest CityEnt., Inc., 64 Ohio St.3d 635, 638, 1992-Ohio-28. The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. Aultman Hosp. Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. See Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Id.
 {¶ 18} Instead of using language such as "lessee may not modify," which would indicate the clause only applies to Burrows, the clauses states that "lessee agrees that no term or condition may be amended * ** except by a written document signed by lessor and lessee" which, by its plain language indicates that any type of modification must be agreed to by both parties. Furthermore, the language of the clause is similar to the type of language employed in the remainder of the contract which binds both parties. The contract frequently uses language such as, "lessee agrees * * *." In addition, a requirement that only one party is required to get modifications in writing would lead to an absurd result, allowing F T to unilaterally change the terms without placing the modifications in writing, while requiring Burrows to get any modifications in writing.
 {¶ 19} Finally, even if the clause and signature at the end of the contract is viewed as an addendum to the contract, the parties' course of dealing indicates that they intended the clause to apply to both parties. Singer v. Buckler (June 23, 1989), Geauga App. No. 1399 (unilaterally signed addendum is of no force unless acted on by both parties). The lease was extended in 1994 and in 2003, both times in writings signed by the parties. Moreover, in regards to the specific lease provision at issue in this case, F T acted in conformity with this clause when it sent a letter to Burrows regarding the lessee's duties at the end of the lease. F T asked Burrows to retain the corrugator as currently installed in the facility, and not to deinstall, disassemble, pack or crate the machine. The letter stated that as long as the corrugator passed an operations test, Burrows would be deemed to have performed its obligations under the return provision of the lease. The letter concluded, "[i]f you are in agreement with this procedure, please sign below and return a copy to me at your earliest convenience." This letter acted as a proposed modification of the lease, which Burrows rejected when if failed to sign the document.
 {¶ 20} F T argues that not every modification was in writing, evidencing an intent that the parties not be bound by the provision. Specifically, F T alleges that Burrows made modifications to the corrugator, such as upgrades, without written consent of F T, as required under the contract. However, even if these allegations are accepted as true, these actions would show that Burrows breached the lease by not following its provisions, not that Burrows intended to disregard the requirement that any modification to the lease to be in writing. With the major modifications to the lease, the parties entered into writings signed by both parties, and in regards to the disassembly provision, F T attempted a modification of the provision in writing, which was rejected by Burrows. Therefore, we find that the requirement that any modification to the lease must be in writing applies to both parties.
 Inspection Requirement {¶ 21} The lease provided that F T "has the right upon reasonable notice to Lessee to inspect the Equipment wherever located." F T argues that Burrows breached the lease when it refused to allow Perry Thatcher a second opportunity to inspect the corrugator. As mentioned above, Thatcher inspected the corrugator while it was running and noted some areas of concern. According to Thatcher's affidavit, Burrows agreed to let him inspect the machine when it was not operating, but he never received the chance. Burrows argues that there was no agreement for a second inspection and that it remedied the areas of concern noted by Thatcher.
 {¶ 22} On additional briefing, F T argues that Burrows breached the lease by failing to allow it to inspect the machine while it was not operating. It contends that by failing to allow the second inspection, it could not ensure that the corrugator was being returned in good condition. It argues that it was damaged because it had to sell the corrugator at a severely reduced price because it was unable to determine whether the machine was damaged or not, and is entitled to the difference in price due to the breach.
 {¶ 23} Assuming two inspections were required by the lease, and viewing the evidence in a light most favorable to F T, based on Thatcher's affidavit there appears to be a genuine issue of whether Burrows breached the agreement by not allowing a second inspection. However, the complaint only raises one issue regarding breach of the lease. This count states that Burrows breached the lease by failing to follow F T's directives to leave the machine where it was and in de-installing the machine. No mention is made of the inspection clause at all, nor is any mention made that this breach caused damages. Instead, the complaint only alleges that F T was damaged because the corrugator was disassembled, and it will cost to reassemble the machine. Therefore, the issue of whether Burrows failed to allow a second inspection is irrelevant to the claims raised in the complaint.
 Breach of Contract {¶ 24} F T argues that the trial court erred in granting the motion for summary judgment and finding that Burrows did not breach the contract. It presents three arguments to support this contention: 1) Burrows' interpretation leads to an absurd result; 2) Burrows acted in bad faith; and 3) Burrows accepted F T's waiver or the disassembly requirement.
 Absurd Result {¶ 25} F T argues that the contract can not be interpreted to allow an absurd result and that they intended that the disassembly occur only if the corrugator was "returned" to another location. F T contends that reading the lease to require Burrows to disassemble the corrugator when it had been instructed not to do so would be absurd as it would cost both parties in unnecessary expenses.
 {¶ 26} Interpretation of a contract is a matter of law. Appellate courts will review de novo the trial court's interpretation of a contract. Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212,214; Hartley v. Brown Publishing Co., Madison App. No. CA2005-03-009,2006-Ohio-999, ¶ 16. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in their agreement. Graham v. Drydock Coal Co., 76 Ohio St.3d 311, 313,1996-Ohio-393. "Common words appearing in a contract will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 27} However, the problem with appellant's argument is that the language of the contract is clear and unambiguous and subject to only one interpretation. The contract provides that at the expiration of the lease Burrows has the choice of "electing one of the following options for the [equipment: return the [equipment under clause (b) below; or purchase the [equipment under clause (c) below." If notice is not given, the contract provides that Burrows will be "deemed to have elected to return the equipment." Thus, on the expiration of the lease, Burrows must purchase the equipment or return it.
 {¶ 28} The contract further provides that if Burrows "elects or is deemed to have elected to return the [equipment at the expiration of the lease * * * then [Burrows] shall at its sole expense and risk, de-install, disassemble, pack and crate, insure and return the [equipment to Lessor (all in accordance with applicable industry standards) at any location in the continental United States of America selected by Lessor." The paragraph continues with conditions for maintaining the operability of the equipment. According to the plain words of the contract, if Burrows elects to return the equipment, it shall de-install, disassemble, pack and crate, insure and return the equipment to the location chosen by F T. Therefore, the problem is not an ambiguity in the contract, but instead, that the event that occurred in this case (F T deciding to keep the corrugator in the building) was not addressed in the contract.
 {¶ 29} It is not the responsibility or function of a court to rewrite the parties' contract in order to provide for a more equitable result. If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court must give effect to the agreement's express terms. Uebelacker v. Cincom Systems, Inc. (1988),48 Ohio App.3d 268, 271. Where a contract is clear and unambiguous, a court must enforce the agreement by attributing the plain and ordinary meaning to its language as written. Towne v. Progressive Ins. Co., Butler App. No. CA2005-02-031, 2005-Ohio-7030, ¶ 8. The court may not formulate a new contract for the parties. Aultman Hosp., 46 Ohio St.3d at 54-55. A contract does not become ambiguous because its operation may work a hardship upon one party. Ohio Crane Co. v. Hicks (1924),110 Ohio St. 168, 172; see, also, Altman, 46 Ohio St.3d at 54-55.
 {¶ 30} Principles of contract interpretation preclude a court from rewriting the contract by reading into it language or terms that the parties omitted. Porter v. Columbus Bd. of Indus. Relations (1996),111 Ohio App.3d 238, 242. "The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." Montgomery v. Liberty Twp. Bd. of Edn. (1921),102 Ohio St. 189, 193; Aultman, 46 Ohio St.3d at 53.
 {¶ 31} "Cases of contractual interpretation should not be decided on the basis of what is `just' or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work." Ervin v. Garner (1971),25 Ohio St.2d 231, 239-240. In the absence of fraud or bad faith, a court will not save one party from an improvident contract when both parties had equal bargaining power. Ullmann v. May (1947), 147 Ohio St. 468, paragraph two of the syllabus.
 {¶ 32} The problem in this case did not arise because of an ambiguity in the contract. Instead, it arose because the contract did not address what would happen should F T decide to leave the corrugator in place at the building where Burrows was operating it. This was a contingency that might have been foreseen and specifically provided for in the contract, but was not. F T essentially urges a construction of the contract that differs from the contract's terms on the basis of circumstances not contemplated by the parties and essentially amounts to a request to rewrite the contract. As the Ohio Supreme Court has reiterated on several occasions, however, it is not the function of courts in Ohio to formulate a new contract for the parties on these types of facts. Aultman at 54; Ullman at 475.
 Bad Faith {¶ 33} F T claims that Burrows did not act in good faith when it interpreted the contract to reach a result not intended by either party at the inception of the contract.
 {¶ 34} In Ohio, there is a common law duty of good faith which is implied in the performance of contracts. B-Right Trucking Co. v.Interstate Plaza Consulting (2003),154 Ohio App.3d 545, 2003-Ohio-5156, ¶ 32. What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties. Id. If one acts in accordance with the statutory and contractual rights, then there is no bad faith. Id.
 {¶ 35} This court has previously addressed the application of good faith in contracts by stating, "[although courts often refer to the obligation of good faith that exists in every contractual relation, * * * this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. `Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." Board of Trustees of Union Townshipv. Planned Development Co. of Ohio, (Dec. 11, 2000), Butler App, No. CA2000-06-109, quoting Ed Shory Sons, Inc. v. Soc. Natl. Bank (1996),75 Ohio St.3d 433, 443-444.
 {¶ 36} This court further explained: "[a]n obligation to use good faith in performing a contract is imposed only under limited circumstances. For example, where a contract is silent as to an issue, the parties are required to use good faith in filling the gap in the contract. Id. Where a matter is specifically covered by the written terms of a contract, there are no implied promises in relation to that matter. An obligation of good faith arises only where a matter was not resolved explicitly by the parties." Id. (internal citations omitted.)
 {¶ 37} In the Union Township case, this court examined the extent that good faith obligations applied to contracts and found the limitation of a good faith obligation in accordance with the above principles, "is the more compelling where the parties to the contract are sophisticated businessmen. Requiring that the contract is entered into in good faith goes to the very essence of the contract's inception. * * * Where performance does not affect the purpose of the contract, performance is governed not by implied good faith obligations, but by only the express terms of the contract, as those are the written reflection of parties' negotiated agreements. To impose obligations not included in the contract under such circumstances would be to mandate requirements of performance for which the parties did not bargain." Id. This court therefore found that "limiting any good faith obligations accords with prior case law requirements that where the contract explicitly addresses a subject, no implied obligations may be imposed." Id.
 {¶ 38} This court continued by explaining: "[t]he above limited application of implied good faith duties serves important contractual purposes. Where a party wishes to impose specific obligations upon the other contracting party on a matter not central to the contract, those obligations must be bargained for and included in the contract. This encourages parties to fully negotiate their deal and to explicitly include in the contract the results of their negotiations. This also prevents courts from having to flounder through unexpressed intentions in a vain attempt to discern the true agreement of the parties. To impose such a duty upon courts would thwart the very purposes of objective contractual interpretation. Where the parties are sophisticated parties who engaged in extensive negotiations, where the contract expressly addresses specific issues, and where the contested provisions are not central to the existence of the contract or to performance of the purposes of the contract, a court may not read into the contract terms which the parties have not included." Id.
 {¶ 39} Applying the above principles to this case, F T and Burrows are sophisticated business entities who drafted the contract in this case. With regards to the end of the lease, the terms are clear and specific, as addressed above. If the parties had desired, they could have inserted provisions into the contract that addressed the possibility that F T would keep the corrugator in the building, or allow for some flexibility on the requirement that it be disassembled (such as giving F T the option to require it to be disassembled if it were to be taken outside the building). Instead, the contract required Burrows to disassemble, pack and crate the equipment if it returned it and, as discussed above, the parties should be left with what they contracted for, even if it creates a hardship on one party.
 Waiver — Acceptance {¶ 40} F T argues that the evidence "suggests" that Burrows accepted F T's waiver of the right to require disassembly of the corrugator based on "ostensible acquiescence" to Thatcher's instruction not to disassemble the machine.
 {¶ 41} Waiver is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming that right. Chubb v. Ohio Bur. of Workers' Comp., 81 Ohio St.3d 275,278, 1998-Ohio-628; Marfield v. Cincinnati, D T Traction Co. (1924),111 Ohio St. 139, 145.
 {¶ 42} The waiver of any term of a contract may be accomplished by a subsequent oral or written agreement or by the acts and conduct of the parties. List Son Co. v. Chase (1909), 80 Ohio St. 42, 49. However, the party asserting the defense of waiver bears the burden to prove it by a preponderance of the evidence, by showing "a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part." White Co.v. Canton Transportation Co. (1936), 131 Ohio St. 190, at paragraph four of the syllabus.
 {¶ 43} The evidence produced by F T, even when viewed in its favor, does not meet this standard. Perry Thatcher claims that Ray Carrock, Burrows' Vice President, did not say anything when Thatcher instructed him not to disassemble the corrugator if Burrows was not going to buy it, and that Burrows agreed to keep the machine in place for another inspection. However, even viewing the facts in F T's favor, these acts do not rise to the level of clear, unequivocal, decisive acts constituting acceptance of the waiver.
 {¶ 44} F T argues that because the disassembly provision was intended to benefit F T, it could unilaterally relinquish that right. However, the express language of the contract requiring all modifications and waivers to be in writing negates this argument. Moreover, the provision could also benefit Burrows if the contemplation at the time of the contract was that the machine would be sent outside of the building in that another company could not immediately compete with Burrows. Simply because circumstances changed so that it would benefit F T if the machine was not disassembled did not create a requirement that Burrows must accept the waiver if it determined it was in its best interest not to do so.
 Tort Claims {¶ 45} F T argues that the trial court erred in dismissing its tort claims because the tort claims are viable even if there was no breach of contract. However, F T has not cited any authority to support this proposition. Instead, because Burrows was acting within its contract rights, there is no cause of action for tort claims arising out of the contract. See Chuparkoff v. Farmers Ins. of Columbus, Summit App. No. 22712, 2006-Ohio-3281, ¶ 40 (exercising dominion and control over another's property in a manner inconsistent with the other's ownership rights is not conversion when the party is acting within its contractual rights).
 Conclusion {¶ 46} In this case, two sophisticated business entities entered into a contract that contained a provision that primarily benefited one party. Circumstances changed, and at the end of the lease, strict compliance with the provision now benefited the other party. We apply general contract principles, and as discussed above, while Burrows could have accepted F T's proposed waiver of the disassembly requirement, it was not required to do so. Instead, the parties must be left with interpretation of the lease as it is, even if this works a hardship on F T. Appellant's assignment of error is overruled.
 {¶ 47} Judgment affirmed.
POWELL, P.J., and BRESSLER, J., concur.
[1] The complaint also contained causes of action related to other provisions of the leases, not relevant on appeal, which were later settled by the parties.